Our next case is Kevin Golden versus the Secretary of Veterans Affairs 2023-2070. Good morning and may it please the court. During Mr. Golden's Navy service he was exposed to acoustic trauma on a ship and he now has tinnitus and hearing loss. There's uncontroverted medical evidence that Mr. Golden's tinnitus is at least as likely as not a symptom of his hearing loss but he's been granted service connection for only his tinnitus. Mr. Golden has not received or been granted service connection for his hearing loss even though the two disabilities are inextricably linked. That is because under the Secretary's and Veterans Court's legal interpretation of section 3.310a for secondary service connection, Mr. Golden's hearing loss must arise after and as a result of his service-connected tinnitus. The Secretary's and Veterans Court's legal interpretation is wrong. Under the correct interpretation of the regulation it allows for an additional evidentiary avenue to receive service connection where an already service-connected disability can be used to provide the missing link between a second separate disability and an in-service injury or disease where there's medical evidence associating the service-connected disability with the secondary condition. Starting first... What are your definitions of the secondary condition versus the original condition? I believe you're referring to the second sentence of the regulation. I believe in the Manzanares case this court discussed the VA's interpretation of what they once secondary service connection has been established that the secondary condition is to be afforded the exact same effect as the primary condition. It doesn't have any sort of causal relationship requiring the primary condition to be what causes the secondary condition. It's really just establishing that in the eyes of entitlement they're to be afforded the exact same effect. Starting first with the words of the regulation itself, section 3.310a states that a secondary disability or condition shall be service-connected if that disability is approximately due to or the result of a service-connected injury or disease. Section 3.310a does not require by its words that the secondary condition arise from or be the result of the primary disability and if the VA had wanted to draft the regulation that way it could. It instead chose to require it to be approximately due to or the result of the service-connected disease or injury. As the Secretary has conceded in the context of Section 38 U.S.C. Section 1110 which is the authorizing statute for this regulation, the terms disability and disease or injury have different meanings. Despite acknowledging and conceding that these terms have different meanings, the Secretary continues to replace the word disease or injury in the regulation in the first sentence with the word disability. Haven't we always interpreted secondary service connection as meaning that the secondary condition is the result of the first condition? I don't think that's necessarily true.  I mean I don't think that that is true. The cases that the Secretary relies on chiefly is a Veterans Court case which is Ross against Peak where this arises from and is the result of language comes from. In Ross against Peak, the Veterans Court only cites to the regulation for supporting that notion. But as I just mentioned, the regulation itself talks about the secondary condition being the result of the disease or injury not service-connected disability. And really what secondary service connection is meant to provide is it's meant to allow this additional evidentiary avenue for an already service-connected disability to provide the missing link and really show that where it's associated with the secondary condition, you can kind of go back up the chain and trace back from the secondary condition to the in-service injury by way of the service-connected disability and its association. So really there isn't this requirement that the secondary condition be caused by the primary condition or the service-connected disability. It's any sort of evidence linking the two disabilities together is enough to show that there should be service connection in this case back to the same in-service disease or injury. One of your arguments is that the Veterans Court did improper fact-checking. Yes. Can you point me to where in the record it would reflect this purported improper fact-finding? Yes. So this would be in the Veterans Court's decision on Appendix Page 9. And the Veterans Court made two improper fact-findings about five or six lines up from the conclusion. The first is the Veterans Court stated, notably, the board granted service connection for tinnitus based on Mr. Scott, the 2011 exam. And what the board is referring to here is the, or what the Veterans Court is referring to here is the board's 2017 decision granting service connection for tinnitus. If you look at that decision, which is on Appendix Page 2525, nowhere does it say we're granting service connection solely on the basis of the veteran's lay statement. It instead mentions that it considered the totality of the evidence in granting service connection for tinnitus. The second improper, impermissible first instance fact-finding is that no subsequent examiner linked the veteran's hearing loss to his service-connected tinnitus, which is the next sentence. This was also not a finding that the board had ever made. And it's also, so it seems sort of because there isn't any sort of later medical opinion that goes the other way, that cuts the other way and says that there was no association between the tinnitus and the hearing loss later on. Do you know that it's pronounced tinnitus rather than tinnitus? I believe it is pronounced tinnitus. That's how I've heard it pronounced. So that's the pronunciation that I've stuck with. So going back to the, unless there's any further questions on the impermissible fact findings, going back to the issue of the interpretation of the regulation, the Secretary seems to agree with our interpretation except for this add-on that the secondary condition must arise after and result of the primary condition. And this is exemplified on page 16 of the Secretary's brief, where he refers to a correct interpretation of section 3.310A as the service-connected disability may provide a link that would not otherwise exist between an in-service disease or injury and the secondary condition. And that is exactly what we are advocating for here, that you can use this association between an already service-connected disability and a secondary condition to provide that missing link to trace the secondary condition back to the in-service injury through the service-connected disability. The Secretary also relies on this Court's decision regarding the effective dates of, and the treatment of the effective dates of a primary condition and a secondary condition, particularly in view of the second sentence of the regulation that discusses the original and secondary condition. But these decisions from this Court do not cut against or do not really support the Secretary's interpretation of the regulation. In Ellington v. Peek, this Court determined that the second sentence of section 3.310A does not set out a per se rule requiring identical effective dates for primary and secondary conditions, and that such a per se rule would be illogical because the secondary condition may arise years after the primary condition. So Ellington merely recognizes that the secondary condition could arise after the onset, could arise after the onset of the primary condition. It does not foreclose the possibility that the secondary condition occur at the same time as the primary condition or even before the condition. Do you agree that there was an exam after 2011 that linked Mr. Golden's hearing loss to his tinnitus or tinnitus? Do I, could you? Do you agree that there was not an exam after 2011 that linked Mr. Golden's hearing loss to his tinnitus or tinnitus? I don't know how to pronounce that. Yeah, yeah. No, I would agree that there isn't a second examination after the 2011 one that links the two together again. But there isn't an examination saying somehow unlinking the two or saying that the tinnitus is not a symptom of the hearing loss. So I think all the evidence that we have about the connection between the two is that they're linked together as the tinnitus is a symptom of the hearing loss. Isn't this ultimately a question of fact? No, I don't think it's ultimately a question of fact because of how the Veterans Court interpreted Section 3.310A as requiring the tinnitus, the service-connected disability, to be the cause of the hearing loss, the secondary condition. We believe that's a legal interpretation of the regulation in that it's not the primary service-connected disability that is what needs to cause the in-service or the that's the cause of the secondary condition. It's just the evidence that you look at to get that service connection between the two. So instead of a direct link between the secondary condition and the in-service injury, what secondary service connection allows for is you to trace back through its association with the primary service-connected disability to connect the secondary condition to the in-service injury. In other words, you can dispense with proof of service connection for the hearing loss. You can dispense with proof of direct service connection for the hearing loss. Basically, it seems like the regulation allows for, kind of gives credit for establishing service connection for one disability, and if you can show that that one disability is associated with another disability, that you can then use the fact that the first one's service-connected to demonstrate or use it as evidence that the second one should also be service-connected to that same in-service injury. So based on the text of Section 3.310a, the Veterans Court's interpretation requiring that the secondary condition arrives after, whereas the result of, the primary condition is erroneous. The regulation merely requires that the disability sought to receive secondary service connection be approximately due to or the result of the service-connected or in-service injury or disease. That is, the regulation allows for a veteran to use an already service-connected disability to demonstrate that another related disability should be service-connected as resulting from the same in-service injury. If there's no other questions, I'll reserve the remainder of my time for a moment. We will hold it for you. Mr. Whistler. Morning, Your Honors. May it please the Court. I want to start with one broad point and then talk about the text of the regulation here, 3.310. When a veteran suffers from a present-day disability that he or she contends is related to service, to show service connection, there are two broad paths. You can show a direct service connection by showing that there's an in-service event that provides a nexus between the current disability and the in-service event. Or you can show a secondary service connection, which is that there may not be that nexus between an in-service event and the current disability, but the current disability arises from is causally related to another service-connected disease or injury. I do agree, I don't believe this Court has ever made that holding expressly, certainly the Veterans Court has, but it is clearly an underlying principle that this Court has accepted for decades as a foundational rule of how to evaluate veterans' claims. In here, Mr. Golden presented a claim for direct service connection for his hearing loss. That claim was denied based upon the record evidence, and that has not been appealed. Mr. Golden contended before the Veterans Court that the record that was presented implicitly raised a claim of secondary service connection, which the Veterans Court rejected. And the reason the Veterans Court rejected it is because there was nothing in the record suggesting that causal relationship between the primary service-connected condition, which was the tinnitus, and the secondary condition that he claims was presented by the record, which was the hearing loss. I'd like to point the Court to the reply brief at page 13, which I think has the best encapsulation of Mr. Golden's understanding of the facts of his case and how they relate to the regulatory text. So at 13, he lays out two points where he says, first, his tinnitus is service-connected to an in-service injury of acoustic trauma, and second, the tinnitus is associated with the hearing loss through an unchallenged medical opinion. And those are the two things he contends make this a secondary service connection issue under 3.310A. Now, I would say that number one is false as a matter of fact, number two is true as a matter of fact, but both don't really address anything related to the text of the regulation. So if we look at the regulation, what the regulation requires is a disability... The text of the regulation is on 21 of the library. I believe that's right, Your Honor. Let me just double check before I misstate that. Yes, Your Honor. So a disability which is proximately due to or the result of a service-connected disease or injury shall be service-connected. And so here, just looking at the plain words, the two statements that Mr. Golden makes in his reply at page 13 don't align with what the regulation requires. First, he says that tinnitus is service-connected to an in-service injury of acoustic trauma. What the regulation requires is a service-connected disease. The acoustic injury is not service-connected. Service-connected is a term of art, right? That means a present-day disability that is related to an in-service injury with the proper nexus. What is service-connected here is his tinnitus. There is no service-connected acoustic trauma. That's never been a holding. That's never been a claim that he has made. So that is the problem with the first part of his logical statement. The problem with the second part of his logical statement is he says it's enough to say that tinnitus is associated with hearing loss, but the regulation requires more. It needs to be approximately due to or the result of the service-connected injury or disease. And those words require some form of causality. Now, this Court recently addressed in Spicer that it doesn't need to be direct causality. There can be some intermediate steps that get you from the service-connected disease or injury to the current disability that may be secondarily connected, but there has to be a causal flow of some sort. And that's the piece that the Veterans Court found was missing here, that there was no evidence in the record whatsoever sufficient to present an implicit claim suggesting that there's that causal relationship between the hearing loss and the tinnitus. Everyone accepts as a medical principle that they can occur similarly, that they can arise from a similar condition, but the hearing loss here, as the record showed, wasn't present in the service, didn't arise until many, many years after the fact. And in that factual posture, the Veterans Court held that it wasn't sufficiently raised implicitly by the record. Has anybody looked at the Federal Register Notice adopting this regulation to see what it means? I believe we cited to some of the other Federal Register Notices related to this provision. I don't know that there was anything specifically addressing the argument that's being presented here in the original Federal Register Notice. I don't believe so. At least I'm not aware of any standing here. I may have missed one. So that is our understanding as to how his particular arguments relate to the regulation. Unless the Court has other questions at that point, I do want to address the question whether this whole exercise involved improper fact-finding. I definitely want you to jump in, but I want to just ask one more question in this regard. Do you think that disability and disease or injury mean different things? I think I heard at least a kernel of that argument raised by the other side, and I just wanted to hear yours. They do, and I believe this Court has addressed that before. But VA's understanding is that the disability is really referring to the impairment of function that is compensable. So when referring to the disability, you're assessing the Veteran in the present moment, seeing what impairments they may have in terms of social or occupational functioning, and that's what dictates the amount of compensation they're entitled to under the regulations. A disease or injury is what everybody would understand it to be, some sort of medical condition. It may or may not cause a disability, and that's why we have non-compensable ratings, for example, that 0%, where you might have a disease or injury, but it does not impair your function in a way that's recognizable. So those are distinct in that fashion. And I do want to point out, since I think that was an argument that was a central feature of Mr. Golden's brief, we don't really disagree with that, and I think that's sort of missing the point of what the Veterans Court itself was holding. I do agree that the Veterans Court did make that substitution about disability versus injury or disease, and that, I think, is just a misstatement of the regulation, but I don't think it's a material one, because the point the Veterans Court was relying on was the lack of evidence of causality, and that, I think, is not necessarily directly addressed in Mr. Golden's briefing, but it's the point that's really dispositive here. The regulation plainly requires causality. It has to be due to or the result of the causal language, and that's the piece that was missing here. And so turning then briefly to whether there was improper fact finding. What this court has held in Tadlock and Stinson, the most recent case in 2024, was that the Veterans Court is not permitted to make findings of fact in the first instance. What the court is doing in this exercise is not making any findings of fact. It's making an assessment of the record, and it's not resolving disputes. It's not getting to the truth of any matter. It's simply assessing what is the evidence presented, and does it rise to a legal threshold sufficient to show the possibility that a claim was implicitly presented, at which point, of course, remand would be required, and the board would have to evaluate the merits of that claim, both factually and legally. And that's exactly what this court in Stinson said was permissible. Can you take a look at the particular page that Opposing and give us your take on whether or not that is any form of fact finding? I think it was January 9. Yes, it was, Your Honor, Appendix 9. And the two statements there, first, is that the board-granted service connection for tonight is based on Mr. Golden's lay statements, not the 2011 exam. First of all, that's just indisputably true, and we can look at Appendix 2529, which was that board decision, and it lays out that the key point was simply, did Mr. Golden suffer from tinnitus, and was that something that had occurred in service or could be traced back to his service in a way necessary to establish the nexus? And I think it's important to understand here, you know, tinnitus, it's a ringing in the ear. It's not objectively observable. You know, there's no tests that a medical professional can perform to prove the existence of tinnitus. It's really based exclusively on the veteran's subjective reporting of what they're hearing in their own head. And the veteran provided that statement, provided that evidence, made reports to the medical examiner that he had, in fact, suffered tinnitus going all the way back to service. The board credited those statements and found, at a minimum, that they put the evidence in relative equipoise, provided benefit of the doubt to the veteran, and granted service connection. So that was the fundamental basis for the award. So it's a true statement. So what would you describe the Veterans Court as doing in these two sentences on Appendix 29? All it's doing is observing what exists in the record. It's not resolving a dispute. And I think that's the key distinction between fact-finding versus evaluating the state of the record, right? It's not invoking the tribunal's truth-seeking function. It's not evaluating competing versions, or even maybe uncontested versions, but stating what is true under the appropriate standard of evidence. It's simply evaluating the record, seeing what exists or doesn't exist in the record, and then providing a statement as to whether that meets a legal sufficiency threshold to require further legal evaluation. And that's all it is. And as Stinson said, precisely that exercise is not fact-finding, and it's something that the Veterans Court is not only empowered to do, but is required to do in many instances under its jurisdictional authority. And I'll list as far as other questions that we will ask that you affirm. Thank you, counsel. Thank you. Mr. McDonald. I just have a few points I'd like to make. I think the Secretary of Minute's argument that they're rewriting the regulation so that it makes more sense and aligns with their interpretation of secondary service connection. He mentioned several times that you have to look at the causation standard and what it's due to or the result of. But it's important to look at what the regulation actually says it must be due to or the result of. And it's not the service-connected disability, it's the service-connected injury or disease. And as Judge Cunningham pointed out, those have different meanings. The disability is the functional impairment that's occurred, while the injury or disease is essentially the trauma or the harm or hurt that occurred as a result of an external force. So the Veterans Court's rewriting of the regulation to make it make more sense and align with its interpretation is improper, because you need to look at what has to cause the disability. The second point I'd like to make, I believe Judge Dyke asked if the Federal Register touches on any of this, and it does not. I just wanted to confirm that we looked into this, and it does not touch on any interpretation of these exact words from the regulation. And then one other point I would like to make, and it's made on pages three and four of the gray brief, is that the Veterans Court has used the as a result of a service-connected disability language in other regulations. And that's, in particular, it's 38 CFR section 3.383, where it requires, for example, impairment of vision in one eye as a result of service-connected disability and impairment of vision in the other eye as a result of service-connected disability, and provides an avenue for service connection that way. The VA did not invoke that same language here, and instead chose to invoke service-connected injury or disease. So some effect has to be given to that difference in language that was used. And then finally, I'd like to make one point about the impermissible factual findings, in particular the first one having to do with the the board not granting service connection for attendance based on the 2011 exam, as opposed to his lay statements. If you look at the 2017 board decision on appendix page 2528, the second to last paragraph on the page discusses the 2011 VA examiner examination and the association of the veteran's attendance with his hearing loss, and that's where the hearing loss or the attendance was diagnosed. So it's discussed in the board's decision, and then when granting service connection for attendance, the board on page 2529 states, in consideration of all the evidence of the record. So I think that's an impermissible factual finding by the veterans court to say that the board did not rely on the 2011 VA examination in making that finding. But in consideration, why is that not making an assessment as opposing counsel argued just a few minutes ago? Why is that not making an assessment of? Well, I thought what I heard when I was listening to what you just stated was something about you're pointing to this inconsideration statement as supporting impermissible fact finding, but what I was potentially hearing was that may more so be better described as an assessment being made, which I think is what opposing counsel argued just a few minutes ago. I want you to respond to that. Yes, I think it's not an assessment of the evidence. It's more going towards the, it's kind of casting doubt on whether the merits of the secondary service connection claim could be viable by basically saying, oh, the tinnitus has nothing to do with this hearing loss association that was found in the 2011 VA examination, and instead just has to do with the lay statements. So I think what the veterans court doing is pushing the evidence kind of away from the, what we contend to be, the 2011 examination that links the hearing loss with the tinnitus and says, no, it's not that. It's lay statements that the veteran made. If there's no further questions, thank you. Thank you to both counsel. The case is submitted.